## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TAYLOR ZIMMERMAN,<br>    22301 Delaire Landing Road<br>    Philadelphia, PA 19114,<br><br>    and<br><br>SARA HARTMAN,<br>    134 Clifton Place, Apt. 2<br>    Brooklyn, NY 11238,<br><br>    and<br><br>IYSHA ABED,<br>    513 Quincy Drive<br>    Turnersville, NJ 08012,<br><br>    and<br><br>ROBERT WEINSTEIN,<br>    4213 Deerhurst Dr.<br>    Plano, TX 75093,<br><br>    and<br><br>JILL SCHULSON,<br>    1702 Rodman St.<br>    Philadelphia, PA 19146,<br><br>    and<br><br>LEIA PINTO,<br>    115 Poplar Ave.<br>    Modesto, CA 95354,<br><br>on behalf of themselves and all others<br>Similarly situated,<br><br>        Plaintiffs,<br><br>        v. | Case No.<br><br>COMPLAINT<br><br>PRAYER FOR RELIEF<br><br>JURY DEMAND<br><br>PROPOSED CLASS-ACTION UNDER<br>FED. R. CIV. P. 23 |

1-800 CONTACTS, INC.      :
  66 E. Wadsworth Park Drive  :
  Draper, UT 84020,    :
             :
    Defendant.     :
_____ :

## COMPLAINT

Plaintiffs Taylor Zimmerman, Sara Hartman, Iysha Abed, Robert Weinstein, Jill Schulson, and Leia Pinto, by and through undersigned counsel, bring this action individually and on behalf of a class of all persons and entities similarly situated, against 1-800 Contacts, Inc. ("1-800 Contacts") for damages and injunctive relief under the antitrust laws of the United States and of various state laws.  Plaintiffs allege facts regarding themselves based on personal knowledge, and on information and belief as to all other factual allegations, as follows:

### NATURE OF THE ACTION

1.  This action arises as a result of a series of bilateral agreements between 1-800 Contacts and numerous competitors in the market for online sales of contact lenses that prevent the parties to those agreements from competing against one another through online search advertisements (the "No-Bidding Agreements").  According to the Federal Trade Commission ("FTC"), 1-800 Contacts, which is the largest online seller of contact lenses in the United States, has been the "driving force" behind these agreements and the anticompetitive scheme that they enable.

### PARTIES

2.  Plaintiff Taylor Zimmerman is an individual residing at 22301 Delaire Landing Road, Philadelphia, Pennsylvania.  Ms. Zimmerman has purchased contact lenses from 1-800 Contacts during the Class Period and as recently as 2016.  Ms. Zimmerman has made her purchases while in this judicial District, and 1-800 Contacts delivered the contact lenses to her in

this judicial District. 1-800 Contacts further billed Ms. Zimmerman at an address in this judicial District.

3. Plaintiff Sara Hartman is an individual residing at 134 Clifton Place, Apt. 2, Brooklyn, New York. Ms. Hartman has purchased contact lenses from 1-800 Contacts during the Class Period and as recently as 2016. Ms. Hartman has made her purchases in New York, 1-800 Contacts delivered the contact lenses to her in New York, and 1-800 Contacts billed Ms. Hartman at an address in New York.

4. Plaintiff Iysha Abed is an individual residing at 513 Quincy Drive, Turnersville, New Jersey. Ms. Abed has purchased contact lenses from 1-800 Contacts during the Class Period and as recently as 2016. Ms. Abed has made her purchases in New Jersey, 1-800 Contacts delivered the contact lenses to her in New Jersey, and 1-800 Contacts billed Ms. Abed at an address in New Jersey.

5. Plaintiff Robert Weinstein is an individual residing at 4213 Deerhurst Drive, Plano, Texas. Mr. Weinstein has purchased contact lenses during the Class Period and as recently as 2016. Mr. Weinstein has made his purchases in Texas, 1-800 Contacts delivered the contact lenses to him in Texas, and 1-800 Contacts billed Mr. Weinstein at an address in Texas.

6. Plaintiff Jill Schulson is an individual residing at 1702 Rodman St., Philadelphia, Pennsylvania. Ms. Schulson has purchased contact lenses during the Class Period and as recently as 2016. Ms. Schulson has made her purchases in Pennsylvania, 1-800 Contacts delivered the contact lenses to her in Pennsylvania, and 1-800 Contacts billed Ms. Schulson at an address in Pennsylvania.

7. Plaintiff Leia Pinto is an individual residing at 115 Poplar Ave., Modesto, California. Ms. Pinto has purchased contact lenses during the Class Period and as recently as

119220687_5

2016. Ms. Pinto made her purchases in California, 1-800 Contacts delivered the contact lenses to her in California, and 1-800 Contacts billed Ms. Pinto at an address in California.

8.     Defendant 1-800 Contacts is a corporation organized under the laws of Delaware, with a principal place of business at 66 East Wadsworth Park Drive, Draper, Utah 84020.

## JURISDICTION AND VENUE

9.     Plaintiffs bring this action on their own behalf as well as that of the Classes to recover damages, including treble damages, costs of suit, and reasonable attorneys' fees arising from Defendant's illegal conduct.

10.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, 1337(a),1367, and Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15(a) and 26).  The claims in this case arise under federal antitrust law and therefore present federal questions, they present claims between citizens of different states in which the amount in controversy exceeds $75,000, and they present claims in which the aggregate amount in controversy for the putative class exceeds $5 million and at least one of the members of the putative class is a citizen of a different state than 1-800 Contacts.

11.     Jurisdiction and venue are proper in this judicial district pursuant to Section 12 of the Clayton Act (15 U.S.C. § 22) and 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, a substantial portion of the affected interstate trade and commerce was carried out in this District, and Defendant regularly transacts business in this District.

119220687_5

## CLASS ALLEGATIONS

12.     Plaintiffs bring this action on behalf of themselves and as a class action pursuant to Fed. R. Civ. P. 23(a) and (b)(3).  All Plaintiffs pursue their claims under the Sherman Act on behalf of a class that is defined as follows (the "Federal Class"):

> All persons and entities who purchased contact lenses from 1-800 Contacts in the United States, at any time between January 1, 2004, and the present (the "Class Period").

13.     Plaintiffs Taylor Zimmerman and Schulson also pursue their claims under the Pennsylvania Unfair Trade Practices and Consumer Protection Law on behalf of a class that is defined as follows (the "Pennsylvania Class"):

> All persons and entities who purchased contact lenses from 1-800 Contacts in the Commonwealth of Pennsylvania, at any time between January 1, 2004, and the present.

14.     Plaintiff Sara Hartman also pursues her claims under New York G.B.L. § 349 on behalf of a class that is defined as follows (the "New York Class"):

> All persons and entities who purchased contact lenses from 1-800 Contacts in the State of New York, at any time between January 1, 2004, and the present.

15.     Plaintiff Iysha Abed also pursues her claims under N.J. Stat. § 56:8-2 on behalf of a class that is defined as follows (the "New Jersey Class"):

> All persons and entities who purchased contact lenses contact lenses from 1-800 Contacts in the State of New Jersey at any time between January 1, 2004, and the present.

119220687_5

16.     Plaintiff Robert Weinstein also pursues his claims under Texas Business and Commerce Code § 17.46 and Tex. Business and Commerce Code § 15.05 on behalf of a class that is defined as follows (the "Texas Class"):

All persons and entities who purchased contact lenses from 1-800 Contacts in the State of Texas, at any time between January 1, 2004, and the present.

17.     Plaintiff Pinto also pursues her claims under California Civil Code §§ 1750 *et seq.* on behalf of a class that is defines as follows (the "California Class"):

All persons and entities who purchased contact lenses from 1-800 Contacts in the State of California, at any time between January 1, 2004, and the present.

18.     The definitions of the Federal Class, the Pennsylvania Class, the New York Class, the New Jersey Class, and the Texas Class (collectively, the "Classes") specifically exclude the following persons or entities:

a.     The Defendant;

b.     Any of the Defendant's co-conspirators;

c.     Any of the Defendant's parent companies, subsidiaries, or affiliates;

d.     Any of Defendant's officers, directors, management, or employees;

e.     All governmental entities; and

f.     The Judges and chambers staff in this case, as well as any members of their immediate families.

19.      Plaintiffs do not know the exact number of members of the Classes because such information is in Defendant's exclusive control.  Plaintiffs are informed and believe that, due to the nature of the trade and commerce involved, there are hundreds-of-thousands of Class

6

members, if not more, geographically dispersed throughout Pennsylvania, the United States, and elsewhere, such that joinder of all Class members in the prosecution is impracticable.

20.     Members of the Classes can be ascertained from 1-800 Contacts' own records.

21.     Plaintiffs' claims are typical of the claims of fellow members of the Classes because Plaintiffs directly purchased contact lenses from 1-800 Contacts, Plaintiffs and all members of each class were damaged by the same wrongful conduct, and the relief sought herein is common to all members of each class.

22.     Numerous questions of law or fact common to the Classes – including but not limited to those identified below – arise from the anticompetitive and unlawful conduct alleged herein:

      a.     Whether 1-800 Contacts entered into No-Bidding Agreements;

      b.     Whether the No-Bidding Agreements resulted in search engine companies not displaying to Plaintiffs and the Classes advertisements that were responsive to the user's search;

      c.     Whether the No-Bidding Agreements deprived Plaintiffs and the Classes of truthful and non-misleading information about the prices, products, and services offered by 1-800 Contacts' competitors in the market for online sales of contact lenses;

      d.     Whether the No-Bidding Agreements limited price and service competition among online sellers of contact lenses;

      e.     Whether the No-Bidding Agreements caused Plaintiffs and the Classes to pay higher prices for contact lenses than they would have paid absent the agreements, acts, and practices of 1-800 Contacts;

f.   Whether 1-800 Contacts violated Section 1 of the Sherman Act, 15 U.S.C. § 1;

g.   Whether 1-800 Contacts violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 *et seq.*;

h.   Whether 1-800 Contacts violated N.Y.G.B.L. § 349;

i.   Whether 1-800 Contacts violated N.J. Stat. § 56:8-2;

j.   Whether 1-800 Contacts violated Texas Bus. & Com. Code § 17.46;

k.   Whether 1-800 Contacts violated Texas Bus. & Com. Code § 15.05;

l.   Whether 1-800 Contacts violated Cal. Civil Code § 1750;

m.   Whether 1-800 Contacts violated Cal. Bus. & Prof. Code § 17200; and

n.   Whether 1-800 Contacts violated Cal. Bus. & Prof. Code 17500 *et seq.*

23.   These and other questions of law and fact that are common to the Classes predominate over any questions affecting members of the Classes individually.

24.   Plaintiffs will fairly and adequately represent the interests of the Classes because each of them purchased contacts from 1-800 Contacts and they have no conflicts with any other members of the Class.   Furthermore, Plaintiffs have retained sophisticated and competent counsel who is experienced in prosecuting antitrust class actions and other complex litigation.

25.   Defendant has acted on grounds generally applicable to the Classes, thereby making final injunctive relief appropriate with respect to the Classes as a whole.

26.   This class action is superior to alternatives, if any, for the fair and efficient adjudication of this controversy.   Prosecution of the claims pleaded herein as a class action will eliminate the possibility of repetitive litigation.   There will be no material difficulty in the management of this action as a class action.

27.     The prosecution of separate actions by individual members of any of the Classes would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct.

## TRADE AND COMMERCE

28.     During the Class Period, 1-800 Contacts sold contact lenses in the United States in a continuous and uninterrupted flow of interstate commerce, including through and into this judicial District.

29.     The conduct alleged herein substantially affected interstate trade and commerce in the United States and caused antitrust injury in the United States to Plaintiffs and members of the Classes.

## FACTUAL ALLEGATIONS

### A.     Competition For Online Retail Sales Of Contact Lenses

30.     Contact lenses are medical devices that the United States Food and Drug Administration regulates.  Contact lenses generally require a customer to obtain a prescription from an eye-care professional who is licensed under state law, including ophthalmologists, optometrists, and, at times, opticians.  After obtaining a prescription, a user can have any authorized retailer fill it.  In fact, the federal Fairness to Contact Lens Consumer Act, 15 U.S.C. § 7601 *et seq.*, prevents eye-care professionals from limiting consumers' ability to purchase contact lenses from discount retailers that sell at at lower prices.

31.     Approximately 49.9 million people use contact lenses in the United States – approximately 12.8% of the population.  Annual retail sales of contact lenses in the United States total slightly more than $4 billion.  In 2012, approximately 16.7% of all retail contact lens sales occurred on-line, and that percentage has increased over the past four years.

32.     With respect to online sales of contact lenses, there are specialized sellers, distribution channels, logistics, and promotional strategies, and a distinct subset of consumers who look principally or only to online sellers in order to fill their prescriptions, all of which makes the market for online sales of contact lenses unique from other channels of contact lens sales.

33.     1-800 Contacts has long been the largest online seller of contact lenses in the United States.  Indeed, the FTC has recently estimated that 1-800 Contacts sales constitute 50% of the online retail sales of contact lenses in the United States.  The FTC estimates that the combined share of 1-800 Contacts and the firms with which it executed No-Bidding Agreements is approximately 80%.

34.     1-800 Contacts was formed in 1995 and was a pioneer in direct-to-consumer sales of contact lenses, including online sales of contact lenses.  However, by the early 2000s, a number of competing online retailers had emerged, and many of them were expanding rapidly. Online rivals invested in search advertising and competed directly against 1-800 Contacts.  They often undercut 1-800 Contacts' prices for contact lenses, many by a substantial amount.

35.     As early as 2003, 1-800 Contacts recognized that it was losing sales to lower-priced online competitors, but 1-800 Contacts did not want to lower its prices to compete with those rivals.  To this day, 1-800 Contacts' prices remain higher than the prices of its rivals, but the No-Bidding Agreements limit competition and therefore permit 1-800 Contacts to continue to maintain unreasonably-high prices.

B.     **Online Search Advertising**

36.     Search engines, such as Google, Bing, and Yahoo, are available to internet users without charge.  The search engines finance their services in part through the sale of search

advertising, which refers to the paid advertisements that appear, in response to a search query, on the results page above or adjacent to the actual search results.

37.     Search advertising permits advertisers to deliver a targeted message to a user at the precise moment that the user has expressed an interest in a specific subject.  Often, the user is contemplating making a purchase at that time as well.  For example, a seller of contact lenses can display its advertisement to a user who has entered the search query, "on-line sales of contact lenses."

38.     Search engine users get value from search advertising because the advertisements permit fast, easy competition by permitting users quickly to navigate among several different websites that offer comparable products.  For example, a user seeking to purchase contact lenses can benefit from paid advertisements because the advertisements present a range of merchants offering products from the same manufacturer.  The user then can compare price, service, and other competitive factors that can influence a purchasing decision.

39.     Search engine companies sell advertising space on the search engine results page by means of auctions.   Advertisers bid for placements using keywords.   A separate and automated search advertising auction is conducted each time a user enters a query.

40.     When purchasing search engine advertisements, an advertiser can specify particular keywords to which it wants its advertisement to appear in response.  In general, the advertiser specifies whether its ad should appear as a result of (a) a broad match (whenever a search contains a phrase that is similar to the one that the advertiser has specified), (b) an exact match of a search term or search phrase that the advertiser has specified, or (c) a search term that includes a phrase that the advertiser has specified.

41.     Alternatively, the advertiser can permit the search engine company to use its own algorithms to identify relevant auctions for the advertiser, regardless of the key words in question.

42.     When a consumer enters a query, an algorithm evaluates the relevant bids for the advertising auction.   The winner or winners of the auction will have their advertisements displayed to the user.   If the user clicks on an advertisement and visits the advertiser's website, then the advertiser pays a fee to the search engine company.

43.     Search engine companies determine whether and in what order to place advertisements using sophisticated algorithms that consider the quality of the advertisement. "Quality" refers to the search engine's assessment of whether the advertisement will be relevant and useful to the user.   The search engine makes this assessment based on the search engine's analysis of user feedback, including click-through data, which is incorporated in real time into the algorithms that determine which advertisements will be shown.   As part of that process, the search engine demotes or eliminates advertisements that prove not to be relevant or useful to users.

44.     Search engine users sometimes search for a trademarked word or phrase such as "1-800 Contacts."   In response, the search engine can provide the user with advertisements for the trademark-owner's product or for other, related companies.   Thus, when a user searches for "1-800 Contacts" on Google, the advertisements returned in response might be for 1-800 Contacts or for one or more other online retailers of contact lenses.

45.     An advertiser can also specify negative keywords for a search engine.   Negative keywords instruct the search engine not to include the company's advertisement in response to a particular search.   For example, a company that sells ice hockey equipment might use "air"

as a negative keyword to prevent its advertisement from being displayed in response to a query about "air hockey."

## C.   The No-Bidding Agreements

46.     In or around 2004, 1-800 Contacts began sending cease-and-desist letters to rival online sellers of contact lenses whose search advertisements appeared in response to user queries containing the term "1-800 Contacts" (or similar variations).  1-800 Contacts accused its rivals of infringing its trademarks.

47.     1-800 Contacts claimed that the mere fact that a rival's advertisement appeared on the results page in response to a query containing "1-800 Contacts" constituted trademark infringement.  1-800 Contacts threatened to sue its competitors that did not agree to cease participating in these search advertising auctions.

48.     Most often, rivals agreed to 1-800 Contacts' demands in order to avoid prolonged and costly litigation against a bigger, more well-heeled rival.  Only one competitor refused to settle and proceeded to litigation.

49.     1-800 Contacts' position lacked even the barest hint of merit.  Indeed, when one competitor – Lens.com – resisted 1-800 Contacts' threats, the U.S. Court of Appeals for the 10th Circuit rejected 1-800 Contacts' theory of trademark infringement.  *See 1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1245-49 (10th Cir. 2013).

50.     Between 2004 and 2013, 1-800 Contacts entered at least fourteen No-Bidding Agreements with rival on-line sellers of contact lenses settling 1-800 Contacts' purported trademark claims by restricting bidding in search advertising auctions.

51.     The No-Bidding Agreements go well beyond prohibiting trademark infringement. They restrain a broad range of truthful, non-misleading, and non-confusing advertising.

52.    All fourteen No-Bidding Agreements bar 1-800 Contacts' competitor from bidding in a search advertising auction for any of 1-800 Contacts' trademarked terms, such as "1-800 Contacts" or variations thereof.

53.    Thirteen of the 14 No-Bidding Agreements also require 1-800 Contacts' competitor to employ negative keywords directing the search engines not to display the competitor's advertisement in response to a search query that includes any of 1-800 Contracts' trademarked terms (or variations thereof), even if the search engines' algorithms determine that the advertisement would be relevant and useful to the user.  Thus, even if a user enters a query for "1-800 Contacts cheaper alternatives" or "1-800 Contacts competitors," the user will see advertisements only for 1-800 Contacts.  These agreements are also reciprocal, requiring 1-800 Contacts to employ its competitors' trade names and variations thereof as negative keywords in its own advertising campaigns.

54.    1-800 Contacts has aggressively policed the No-Bidding Agreements, complaining to competitors when the company suspects a violation, threatening further litigation, and demanding compliance.

55.    1-800 Contacts has actively concealed the existence of and the effect of the No-Bidding Agreements by including confidentiality provisions in the No-Bidding Agreements and through other actions designed to create the impression that search results returned by search engines were honest and untained.

**D.    Anticompetitive Effects Of The Bidding Agreements In Relevant Markets**

56.    The relevant product market in which to analyze the impact of the No-Bidding Agreements is the market for the retail sale of contact lenses.  In addition, the market for online

retail sale of contact lenses is a distinct submarket in which to analyze the impact of the No-Bidding Agreements.

57.     Both 1-800 Contacts and its online sales competitors sell contact lenses nationwide, without any distinction for the buyer's location.  The relevant geographic market is therefore the United States.

58.     1-800 Contacts' conduct had the purpose, capacity, tendency, and effect of restraining competition unreasonably and injuring consumers, including Plaintiffs and the Classes, in the following ways, among others:

       a.     Preventing search engine companies from displaying to users on the results page the advertisements that are most responsive to a user's search;

       b.     Impairing the quality of the service provided to consumers such as Plaintiffs and the Classes by search engine companies, including the results page;

       c.     Depriving consumers such as Plaintiffs and the Classes of truthful and non-misleading information about the prices, products, and services offered by 1-800 Contacts' competitors in the market for online sales of contact lenses;

       d.     Limiting price and service competition among online sellers of contact lenses;

       e.     Preventing online sellers of contact lenses from disseminating truthful and non-confusing information about the availability of, and prices for, their products and services; and

       f.     Causing Plaintiffs and the Classes to pay higher prices for contact lenses than they would pay absent the agreements, acts, and practices of 1-800 Contacts.

59.     As horizontal agreements that restrain price competition and restrain truthful and non-misleading advertising, the No-Bidding Agreements are *per se* illegal.  Furthermore, the No-Bidding Agreements are overbroad because they exceed the scope of any property right that 1-800 Contacts may have had, now or at any time, in its trademarks, and the No-Bidding Agreements are not reasonably necessary to achieve any procompetitive benefit.  Less restrictive alternatives are available to 1-800 Contacts to safeguard any legitimate interest the company might have had under trademark law.

60.     Significant barriers to entry prevent new competitors that are not subject to No-Bidding Agreements from entering the market.  A new entrant would have to build the infrastructure necessary, would have to have the resources to purchase the relevant inventory, and would have to attract substantial consumer attention.  These barriers mean that the possibility of a new entrant does not place any meaningful limit on 1-800 Contacts' ability to raise its prices.  At the same time, the No-Bidding Agreements mean that existing competitors do also do not place a meaningful limit on 1-800 Contacts ability to raise its prices.

61.     Plaintiffs and the Classes have been injured in their business and property in that, during the Class Period, they paid more for contact lenses than they would have in the absence of the Defendant's conduct.

**E.      The FTC's Enforcement Action Against 1-800 Contacts**

62.     On or about August 11, 2016, the United States Federal Trade Commission filed an action against 1-800 Contacts alleging that the No-Bidding Agreements violate Section 5 of the Federal Trade Commission Act.  The FTC's action is captioned *In the Matter of 1-800 Contacts, Inc.*, Docket No. 9372 (FTC).

119220687_5

## FIRST CAUSE OF ACTION

## RESTRAINT OF TRADE IN VIOLATION OF SHERMAN ACTION § 1

### (Asserted By All Plaintiffs On Behalf Of The Federal Class)

63.     Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

64.     Beginning at least in 2004, the exact date being unknown to Plaintiffs and the Classes and exclusively within the knowledge of the Defendant, 1-800 Contracts entered into the No-Bidding Agreements, which constitute continuing agreements to restrain trade and commerce unreasonably in violation of Section 1 of the Sherman Act (15 U.S.C. § 1) by limiting competition in the market for online sales of contact lenses.

65.     As a result of the Defendant's unlawful conduct and acts, retail prices for contact lenses were higher than they would have been in the absence of such conduct.

66.     Defendant's anticompetitive and unlawful conduct is per se illegal.

67.     As a result of the Defendant's anticompetitive and unlawful conduct, Plaintiffs and members of the Federal Class have been injured in their business and property in that they have paid more for contact lenses than they otherwise would have paid in the absence of Defendant's conduct.

## SECOND CAUSE OF ACTION

## VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW

### (Asserted By Plaintiffs Zimmerman and Schulson On Behalf of The Pennsylvania Class)

68.     Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

119220687_5

69.     Plaintiff Zimmerman and Schulson and each member of the Pennsylvania Class is a person within the meaning of the Pennsylvania Unfair Trade Practices and Consumer Protection Law.

70.     Plaintiffs Zimmerman and Schulson and each member of the Pennsylvania Class purchased contact lenses for personal use from 1-800 Contacts.

71.     Plaintiffs Zimmerman and Schulson and each member of the Pennsylvania Class suffered an ascertainable loss of money or property because each of them paid a price higher than what it should have been for contact lenses purchased from 1-800 Contacts.

72.     Defendant's No-Bidding Agreements deprive consumers of truthful, non-misleading information about competition in the market for online sales of contact lenses.  In addition, the No-Bidding Agreements cause misleading representations to consumers who search for 1-800 Contacts that there are no alternatives to 1-800 Contacts in the market.

73.     The Defendant's conduct occurred in business or commerce.

74.     Plaintiffs Zimmerman and Schulson and each member of the Pennsylvania Class justifiably relied on the misleading search results caused by the No-Bidding Agreements

### THIRD CAUSE OF ACTION

### VIOLATION OF N.Y.G.B.L. § 349

### (Asserted By Plaintiff Hartman On Behalf Of The New York Class)

75.     Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

76.     Defendant's actions are directed, at least in part, at consumers who purchase contact lenses.

18

77.    Defendant's actions are misleading in a material way in that they deprive consumers about information about competitors who can offer lower prices than 1-800 Contacts.

78.    Plaintiff Hartman and the New York Class have been injured as a result of Defendant's conduct.

## FOURTH CAUSE OF ACTION

### VIOLATION OF N.J. STAT. § 56:8-2
### (Asserted By Plaintiff Abed On Behalf Of The New Jersey Class)

79.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

80.    Defendant's No-Bidding Agreements constitute unlawful conduct because they are an unconscionable commercial practice and are the knowing concealment or suppression of truthful, non-misleading information about competition in the market for online sales of contact lenses.

81.    Plaintiff Abed and the members of the New Jersey Class suffered an ascertainable loss because they paid more for contacts than they would have but for Defendant's unlawful conduct.

82.    The No-Bidding Agreements permitted 1-800 Contacts to maintain prices above competitive levels and therefore caused the loss that Plaintiff Abed and the members of the New Jersey Class suffered.

## FIFTH CAUSE OF ACTION

### VIOLATION OF TEX. BUS. & COM. CODE § 17.46

### (Asserted By Plaintiff Weinstein On Behalf Of The Texas Class)

83.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

119220687_5

84.     Plaintiff Weinstein is a consumer of contact lenses that he has purchased from 1-800 Contacts.

85.     1-800 Contacts engaged in false, misleading, or deceptive acts by entering into the No-Bidding Agreements.   The No-Bidding Agreements deprive consumers of truthful, non-misleading information about competition in the market for online sales of contact lenses.   In addition, the No-Bidding Agreements cause misleading representations to consumers who search for 1-800 Contacts that there are no alternatives to 1-800 Contacts in the market.

86.     1-800 Contacts' conduct is a producing cause of the harm that Plaintiff Weinstein and members of the Texas Class have suffered because it has caused them to pay prices that are above the market price for on-line purchases of contact lenses.

**SIXTH CAUSE OF ACTION**

**VIOLATION OF TEX. BUS. & COM. CODE § 15.05**

**(Asserted by Plaintiff Weinstein On Behalf Of The Texas Class)**

87.     Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

88.     Beginning at least in 2004, the exact date being unknown to Plaintiffs and the Classes and exclusively within the knowledge of the Defendant, 1-800 Contacts entered into the No-Bidding Agreements, which constitute continuing agreements to restrain trade and commerce unreasonably in violation of the Texas Free Enterprise and Antitrust Act of 1983 (Tex. Bus. & Com. Code § 1501 *et seq.*) by limiting competition in the market for online sales of contact lenses.

89.     As a result of the Defendant's unlawful conduct and acts, retail prices for contact lenses were higher than they would have been in the absence of such conduct.

119220687_5

90.     Defendant's anticompetitive and unlawful conduct is per se illegal.

91.     As a result of the Defendant's anticompetitive and unlawful conduct, Plaintiffs and members of the Texas Class have been injured in their business and property in that they have paid more for contact lenses than they otherwise would have paid in the absence of Defendant's conduct.

## SEVENTH CAUSE OF ACTION

## VIOLATION OF CALIFORNIA CIVIL CODE § 1770

### (Asserted By Plaintiff Pinto On Behalf Of The California Class)

92.     Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

93.     Plaintiff Pinto and the members of the California Class are consumers who purchased contact lenses from 1-800 Contacts for personal, family, or household purposes and not for resale.

94.     Plaintiff Pinto and the members of the California Class are "consumers" within the meaning of the California Consumer Legal Remedies Act ("CLRA").

95.     1-800 Contacts is a "person" within the meaning of the CLRA.

96.     Plaintiff Pinto's and the members of the California Class's purchases of contact lenses from 1-800 Contacts were "transactions" within the meaning of the CLRA.

97.     1-800 Contacts advertises a low-price guarantee knowing that its competitors have lower prices but that it has inhibited consumers' ability to discover those lower prices, in violation.  Its conduct constitutes a false or misleading statement of fact concerning the existence of or amounts of price reductions, in violation of California Civil Code § 1770(a)(13).

119220687_5

98.     1-800 Contacts engaged in this conduct in order to induce consumers such as Plaintiff Pinto to purchase contacts at supracompetitive prices, and Plaintiff Pinto and member of the California Class relied to their detriment on these false and misleading representations.

99.     Plaintiff Pinto and the members of the California Class have suffered injuries as a proximate result of 1-800 Contacts' conduct.

### EIGHTH CAUSE OF ACTION

### VIOLATION OF CALIFORNIA BUS. & PROF. CODE § 17500

### (Asserted By Plaintiff Pinto On Behalf Of The California Class)

100.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

101.    1-800 Contacts has disseminated or caused to be made or disseminated before the public in California in through an advertising device, including the internet, which is untrue or misleading, including, *inter alia*, its failure to disclose the No-Bidding Agreements and its assertions that it charges competitive prices, rather than supracompetitive prices.

102.    1-800 Contacts knew or should have known that its claims were false, deceptive, and misleading to ordinary consumers.

103.    Consumers, including Plaintiff Pinto and the members of the California Class, relied to their detriment on 1-800 Contacts' false, misleading, and deceptive claims.

### NINTH CAUSE OF ACTION

### VIOLATION OF CALIFORNIA BUS. & PROF. CODE § 17200

### (Asserted By Plaintiff Pinto On Behalf Of The California Class)

104.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

119220687_5

105.    1-800 Contacts has engaged in unfair competition by virtue of unlawful acts in violation of the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq.*

106.    1-800 Contacts has engaged in unfair competition by virtue of one or more fraudulent and unfair acts by concealing the existence of the No-Bidding Agreements and by its assertions that it charges competitive prices, rather than supracompetitive prices.

107.    Plaintiff Pinto and the members of the California Class relied to their detriment on 1-800 Contacts' fraudulent and unfair acts and have been injured as a result.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs request that the Court enter judgment on their behalf and on behalf of the Classes defined herein, by adjudging and decreeing that:

A.    This action may proceed as a class action, with Plaintiffs serving as the Class Representative, and with Plaintiff's counsel as Class Counsel;

B.    Defendant has combined and conspired in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and that Plaintiffs and the Classes have been injured in their business and property as a result of Defendant's violations;

C.    Plaintiffs and the Classes are entitled to recover damages sustained by them, as provided by the federal antitrust laws under which relief is sought herein, and that a joint and several judgment in favor of Plaintiffs and the Classes be entered against Defendant in an amount subject to proof at trial, which is to be trebled in accordance with Section 4 of the Clayton Act, 15 U.S.C. § 15;

D.    Defendant has violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law, N.Y.G.B.L. § 349, N.J. Stat. § 58:8-2, Tex. Bus. & Com. Code § 17.46, Tex.

Bus. & Com. Code § 15.05, and Cal. Civil Code § 1750, and Cal. Bus. & Prof. Code. §§ 17200 and 17500 *et seq.*;

E.      Plaintiffs and the Classes are entitled to pre-judgment and post-judgment interest on the damages awarded them, and that such interest be awarded at the highest legal rate from and after the date this class action complaint is first served on Defendant;

F.      Plaintiffs and the Classes are entitled to equitable relief appropriate to remedy Defendant's past and ongoing restraint of trade, including:

G.      A judicial determination declaring the rights of Plaintiffs and the Classes and the corresponding responsibilities of the Defendant;

H.      Issuance of a permanent injunction against Defendant and its parents, subsidiaries, affiliates, successors, transferees, assignees, and the respective officers, directors, partners, agents, and employees thereof and all other persons acting or claiming to act on their behalf from continuing and maintaining the conspiracy or agreements alleged herein;

I.      Defendant is to be responsible financially for the costs and expenses of a Court-approved notice program through post and media designed to give immediate notification to the Class;

J.      Plaintiffs and the Classes recover their costs of this suit, including reasonable attorneys' fees as provided by law; and

K.      Plaintiffs and the Classes receive such other or further relief as may be just and proper.

24

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury of all claims asserted in this Complaint so triable.

Respectfully submitted,

_____

Joshua D. Wolson
PA ID No. 84998
Jerry R. DeSiderato
PA ID No. 201097
DILWORTH PAXSON LLP
1500 Market St., Suite 3500E
Philadelphia, PA 19102
jwolson@dilworthlaw.com
jdesiderato@dilworthlaw.com
Tel:  (215) 575-7000 (telephone)
*Attorneys for Plaintiffs*

Dated: December 13, 2016

119220687_5